**CORRECTED**

2012-1248, -1315

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

UNION STEEL, LG HAUSYS, LTD.,
LG HAUSYS AMERICA, INC.,
and DONGBU STEEL CO., LTD.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

NUCOR CORPORATION,

Defendant-Appellee,

and

UNITED STATES STEEL CORPORATION,

Defendant-Appellee.

Appeals from the United States Court of International Trade in consolidated case no. 11-CV-0083, Judge Jane A. Restani.

**AMICUS BRIEF OF JTEKT CORPORATION, KOYO CORPORATION OF U.S.A., NSK LTD., NSK CORPORATION, NTN CORPORATION, NTN BEARING CORPORATION OF AMERICA, AMERICAN NTN BEARING MANUFACTURING CORPORATION, NTN-BOWER CORPORATION AND NTN DRIVESHAFT, INC. IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL**

Neil R. Ellis
Jill Caiazzo

Counsel to JTEKT Corporation
and Koyo Corporation of U.S.A.

Robert A. Lipstein
Alexander H. Schaefer

Counsel to NSK Corporation, NSK
Ltd., and NSK Precision America, Inc.

Kevin M. O'Brien
Diane A. MacDonald
Christine M. Streatfeild

Counsel to  NTN Corporation,
NTN Bearing Corporation of
America, American NTN Bearing
Manufacturing Corporation,
NTN-Bower Corporation and
NTN Driveshaft, Inc.

Dated:  June 11, 2012

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

UNION STEEL V US, 2012-1248, -1315

CERTIFICATE OF INTEREST

Counsel for proposed amici, JTEKT Corporation and Koyo Corporation of U.S.A., certifies the following:

1.     The full name of every party or amicus represented by me is:

      JTEKT Corporation and Koyo Corporation of U.S.A.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      Not applicable

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      Koyo Corporation of U.S.A. is a wholly owned subsidiary of JTEKT Corporation, a publicly trade company in Japan. Toyota Motor Corp. is a publicly owned company that owns more than 10 percent of JTEKT Corporation.

4.     ☐     There is no such corporation as listed in paragraph 3.

5.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

      Sidley Austin LLP; Neil R. Ellis and Jill Caiazzo

Dated: June 11, 2012

Neil R. Ellis
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
(202) 736-8000

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

UNION STEEL V US, 2012-1248, -1315

CERTIFICATE OF INTEREST

Counsel for proposed amici, NSK Ltd. and NSK Corporation, certifies the following:

1.  The full name of every party or amicus represented by me is:

    NSK Ltd. and NSK Corporation

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    Not applicable

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    Not applicable

4.  ☐☐  There is no such corporation as listed in paragraph 3.

5.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

    Crowell & Moring LLP:  Robert A. Lipstein and Alexander H. Schaefer

Dated:  June 11, 2012

_____/s/ Robert A. Lipstein_____
Robert A. Lipstein, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500

**Form 9: Certificate of Interest**

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Union Steel, *et al.*  v. United States

No. 2012-1248, -1315

CERTIFICATE OF INTEREST

Counsel for Amicus, NTN Corporation, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Bower Corporation, NTN Driveshaft, Inc., and NTN-BCA Corporation ("NTN"), certifies the following:

1.    The full name of every party or amicus represented by me is:

NTN Corporation, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Bower Corporation, and NTN Driveshaft, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN Bower Corporation, and NTN Driveshaft, Inc. are wholly-owned subsidiaries of NTN USA Corporation, which is a wholly-owned subsidiary of NTN Corporation, a publicly-held Japanese Corporation. No other corporations or publicly-held companies own 10 percent or more of stock in NTN Corporation.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court of agency or are expected to appear in this court are:

Baker & McKenzie LLP: Kevin M. O'Brien, Diane A. MacDonald, and Christine M. Streatfeild

June 11, 2012
    Date

    Diane A. MacDonald
    Printed name of counsel

Please note: All questions must be answered.
cc: _____

124

# TABLE OF CONTENTS

STATEMENT OF INTEREST ....................................................................1

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT ..........................................................................................5

I.   DONGBU AND JTEKT ARE PRECEDENTIAL DECISIONS
     WHOSE HOLDINGS GOVERN THIS CASE.........................................5

     A.   Dongbu and JTEKT Are Consistent With Earlier Zeroing
          Precedent ...............................................................................6

     B.   This Court Should Again Reject the Majority of the Proffered
          Justifications for the Department's Inconsistent Interpretation of the
          Same Statutory Provision, Consistent with Dongbu and JTEKT..........8

II.  CORUS ESTABLISHES THAT DIFFERENCES IN
     INVESTIGATION AND REVIEW CALCULATION
     METHODOLOGIES CANNOT JUSTIFY THE DEPARTMENT'S
     INCONSISTENT STATUTORY INTERPRETATIONS .....................11

III. AFFIRMANCE WOULD AUTHORIZE THE GOVERNMENT TO
     ADOPT CONFLICTING STATUTORY INTERPRETATIONS
     WITHOUT A LIMITING PRINCIPLE. ................................................15

     A.   The Department's Interpretation is Subject to Limited Deference .... 16

     B.   There Is No Indication that Congress Intended for the
          Department to Adopt Conflicting Statutory Interpretations.............. 18

     C.   If the Department Is Permitted to Apply Conflicting Statutory
          Interpretations in the Zeroing Context, the Department Will
          Be Able To Do So In Virtually Any Other Context Under the
          Antidumping Statute........................................................................ 22

CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

## CASES:

Cathedral Candle Co. v. United States Int'l Trade Comm'n,
400 F.3d 1352 (Fed. Cir. 2005)............................................................. 18

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,
467 U.S. 837 (1984) ................................................................. 10, 16

Clark v. Martinez, 543 U.S. 371, 381 (2005) ................................. 5, 22-23

Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343 (Fed. Cir 2005) ........ passim

Dongbu Steel Co. v. United States, 635 F.3d 1363 (Fed. Cir. 2011) .............. passim

FAG Kugelfischer Georg Schaefer AG v. United States,
332 F.3d 1370 (Fed. Cir. 2003)........................................................ 19-21

Gary Gose v. United States Postal Serv., 451 F.3d 831 (Fed. Cir. 2006).......... 17-18

JTEKT Corp. v. United States, 642 F.3d 1378 (Fed. Cir. 2011) .................... passim

NTN Bearing Corp. v. United States, 74 F.3d 1204 (Fed. Cir. 1995) .................... 22

SKF USA, Inc. v. United States, 263 F.3d 1369 (Fed. Cir. 2001).................... 17, 19

SKF USA Inc. v. United States, 630 F.3d 1365 (Fed. Cir. 2011) .................... 22-24

Sorenson v. Treasury, 475 U.S. 851 (1986)............................................ 18

Timken Co. v. United States, 354 F.3d 1334 (Fed. Cir. 2004)................................5

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994) ................................ 17-18

Union Steel v. United States, 823 F. Supp. 2d 1346 (Ct. Int'l Trade 2012).... 5, 9-10

**STATUTES:**

19 U.S.C. § 1677(35) ...................................................................... passim

19 U.S.C. § 1677a(f) ............................................................................ 23

19 U.S.C. §§ 1677b(a)(6) ..................................................................... 23

**OTHER AUTHORITIES:**

Antidumping Proceedings: Calculation of the Weighted Average
Dumping Margin and Assessment Rate in Certain Antidumping
Duty Proceedings; Final Modification, 77 Fed. Reg. 8,101 (Feb. 14, 2012) ......... 17

Brief for Defendant-Appellee, Department of Commerce at 18,
Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343 (Fed. Cir. 2005)
(No. 04-1107), available at 2004 WL 3768287 ..................................................... 13

# STATEMENT OF INTEREST

JTEKT Corporation ("JTEKT") is a Japanese producer of ball bearings and parts thereof, which are imported into the United States by its subsidiary, Koyo Corporation of U.S.A. NSK Ltd. ("NSK") is also a Japanese producer of ball bearings and parts thereof, and its products are imported into the United States by its subsidiary, NSK Corporation. Similarly, NTN Corporation ("NTN") is a Japanese producer of ball bearings and parts thereof, which are imported into the United States by its subsidiaries NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN-Bower Corporation and NTN Driveshaft, Inc. Together, JTEKT, NSK and NTN (collectively, "amici") count among their customers many of the largest manufacturers of automobiles and other machinery in the world, including many located in the United States.

In 1989, the U.S. Department of Commerce ("Department") imposed antidumping duty orders on imports of ball bearings and parts thereof from various countries, including Japan. Since that time, the Department has conducted "administrative reviews" to determine the dumping duties applicable to imports under these orders. Amici have participated as respondents in these annual administrative reviews, including a number of reviews that are the subject of pending judicial challenges before the Court of International Trade on the very subject of this appeal.

The Department has applied its zeroing methodology in every administrative review of the ball bearings antidumping orders, even after the Department abandoned zeroing in original investigations. Further, the Department has advanced in the ball bearings administrative reviews and in the administrative review that is the subject of this appeal substantially the same justifications for its inconsistent interpretation of 19 U.S.C. § 1677(35), upon which its continued use of zeroing is based. These justifications currently are under review by the U.S. Court of International Trade ("Trade Court") in actions involving JTEKT, NSK and/or NTN. See, e.g., JTEKT Corp. v. United States, USCIT Ct. No. 08-00324; JTEKT Corp. v. United States, USCIT Ct. No. 07-00377. Because the instant appeal is at a more advanced stage than the actions involving JTEKT, NSK and/or NTN, the outcome of this appeal will control the disposition of the actions before the Trade Court. Moreover, the outcome of this appeal will control the Department's dumping calculations in any future administrative reviews of the antidumping duty orders on ball bearings.

Amici therefore have a significant interest in the outcome of this appeal, inasmuch as its resolution may dictate whether their dumping liability will be calculated using the Department's challenged zeroing methodology. This brief is submitted to assist the Court in understanding more broadly the flaws in the

Department's purported justification for the continued use of the zeroing

methodology in administrative reviews.

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), amici state that

the entirety of this brief was co-authored by amici's counsel, and that no person or

party other than amici contributed money intended to fund the preparation or

submission of this brief.

Pursuant to Federal Rule of Appellate Procedure 29(b), this proposed amicus

brief is accompanied by a motion for leave to file.


## SUMMARY OF ARGUMENT

Amici submit that several reasons compel reversal of the decision below.

First, as this Court has clearly explained, its decisions in Dongbu Steel Co. v.

United States, 635 F.3d 1363 (Fed. Cir. 2011) and JTEKT Corp. v. United States,

642 F.3d 1378, 1379 (Fed. Cir. 2011) do not represent irreconcilable "breaks" from

pre-existing precedent, because they do not address the propriety of Commerce's

zeroing methodology in the abstract (as earlier cases did) but rather its inconsistent

application as between investigations and administrative reviews.  As such, the

Dongbu and JTEKT decisions are valid precedent whose holdings must govern in

this case.  Accordingly, to the extent that these holdings already have rejected

Defendant-Appellees' explanations that (1) Commerce's divergent practice has

been ratified by earlier precedent; and (2) Commerce's implementation of World

Trade Organization ("WTO") rulings renders its divergent practice lawful, this

Court should reject those explanations again here.

Second, the only justification advanced by the Department to support its

inconsistent statutory interpretation that arguably may be considered "new" simply

rehashes an argument already considered – and rejected – by this Court.  This

Court's precedent establishes that differences in the calculation methodologies

employed in original investigations and administrative reviews cannot justify the

Department's inconsistent interpretation of 19 U.S.C. § 1677(35).  See Corus Staal

BV v. Dep't of Commerce, 395 F.3d 1343, 1346-47 (Fed. Cir. 2005) ("Corus I").

Indeed, the Court in Corus I reached the conclusion that calculation differences

were immaterial to the zeroing inquiry based on arguments forcefully presented by

the Department.  Although the Department now may wish to disavow these

arguments and the resulting precedent, the Court cannot.  Corus I compels this

Court to reject the Department's proffered justification for its inconsistent statutory

interpretation.

Third, the Department does not have unfettered discretion to adopt or adhere

to methodologies without regard to the statute that grounds its actions.  Although

the Department is the agency charged with administering the antidumping laws, it

is subject to judicial review to ensure that it has not interpreted its statutory

directives in an inconsistent or arbitrary manner. In this instance, the Department seeks to apply the same statutory provision, which defines the terms "dumping margin" and "weighted average dumping margin," in diametrically-opposed manners in antidumping investigations and administrative reviews. These definitions, however, are applicable to both segments of the antidumping proceeding in the same manner; the concepts they represent are identical in both segments of the proceeding; and there is no indication in the statute that they are to be applied in different manners. Therefore, contrary to the warning by the courts against "chameleon"-like statutes, Clark v. Martinez, 543 U.S. 371, 381 (2005), the Department has created an inconsistent and irreconcilable reading of the statute. Amici submit that this Court must curb such arbitrary decision-making and reject the Department's conflicting interpretations of 19 U.S.C. § 1677(35).

## ARGUMENT

I.   **DONGBU AND JTEKT ARE PRECEDENTIAL DECISIONS WHOSE HOLDINGS GOVERN THIS CASE**

The Trade Court's opinion in this case suggests that this Court is obliged to choose between two divergent branches of precedent: the Timken Co. v. United States, 354 F.3d 1334 (Fed. Cir. 2004) and Corus I line of decisions, in which this Court affirmed Commerce's discretion to apply the zeroing methodology, and the Dongbu and JTEKT decisions, which the Trade Court suggests represent the

5

respective plaintiffs' purported attempts to force the court to "mandate not zeroing." Union Steel v. United States, 823 F. Supp. 2d 1346, 1356 (Ct. Int'l Trade 2012). This is a false choice. As this Court already has recognized in both Dongbu and JTEKT, the two lines of cases address fundamentally different questions, their reasoning and results are entirely reconcilable, and indeed already have been reconciled by this Court. Given that both lines of cases are binding precedent, to the extent that this Court in Dongbu and JTEKT rejected many of the justifications the Department proposes here to support its inconsistent statutory interpretation, the Court should do so again here.

## A.    Dongbu and JTEKT Are Consistent With Earlier Zeroing Precedent

The Timken/Corus/SKF line of cases stands for the proposition that the antidumping statute allows – but does not mandate – application of the zeroing methodology. See Timken, 354 F.3d at 1342 ("{W}hile the statutory definitions do not unambiguously preclude the existence of negative dumping margins, they do at a minimum allow for Commerce's construction . . . Here, because Commerce's zeroing practice is a reasonable interpretation of the statutory language, we do not question it in light of other reasonable possibilities.") Of necessity, the statute therefore likewise allows – but does not mandate – non-application of that methodology. In short, these cases established that the

6

Department is free to choose whether to interpret the statute one way or the other. The new issue raised in Dongbu and JTEKT – which none of the earlier cases addressed – is whether the Department can instead opt for both; that is, having chosen to interpret the controlling statutory provision one way in investigations, may it still lawfully interpret the same provision another way in administrative reviews. See e.g., Dongbu, 635 F.3d at 1370 ("We have upheld Commerce's use of zeroing in both investigations and administrative reviews as a reasonable interpretation of this ambiguous statute; however *we have never considered whether it is reasonable under the second step of Chevron for Commerce to use inconsistent interpretations of the same statutory language*") (emphasis supplied).

Even if this Court had answered this question with a simple "no," that holding would not mandate any particular result as to zeroing. The Department would remain free to apply zeroing, or not, in both types of proceedings or in neither, as it saw fit – indeed, as the Government has repeatedly pointed out, the WTO determinations that drove the change to the Department's methodology are not legally binding on the agency or the courts. See Dongbu, 635 F.3d at 1373 (noting that if the Department cannot justify using opposite interpretations, it "is of course free to choose a single consistent interpretation of the statutory language.")

But the Court in Dongbu and JTEKT stopped well short of a categorical answer, instead affording the Department an opportunity to further explain and

justify its disparate interpretations.  See id. ("We accordingly vacate the decision

of the Court of International Trade and remand for further proceedings to give

Commerce the opportunity to explain its reasoning.")  Amici's position (as detailed

in Section II below) is that Commerce has failed satisfactorily to do so; but, as a

threshold matter, it is clear that there is nothing contradictory in the applicable

precedent here – the Department can zero, or not, across investigations and

reviews, so long as it applies the statutory definition consistently.  However,  if the

Department chooses to act inconsistently by zeroing in reviews, but not in

investigations, it must explain itself by offering justifications different from those

already rejected by this Court in Dongbu  and  JTEKT.  The Trade Court's assertion

that "stare decisis does not apply" is therefore incorrect.   To the contrary, the

precedent is consistent, and there is no basis for Defendant-Appellees to argue that

any of the precedential cases were wrongly decided or otherwise should not control

here.


   **B.    This Court Should Again Reject the Majority of the Proffered
         Justifications for the Department's Inconsistent Interpretation of
         the Same Statutory Provision, Consistent with Dongbu and
         JTEKT.**

In response to this Court's mandate to justify the Department's conflicting

statutory interpretation, Defendant-Appellees offered a number of purported

explanations to the Trade Court.  Several of their explanations, however, are thinly

veiled variations of arguments that this Court already has rejected. These rejected explanations include the positions that (1) Dongbu and JTEKT are contrary to binding CAFC precedent, and (2) the Department's divergent interpretations stem from its having implemented narrow changes to comply with WTO rulings, as it is free to do absent statutory conflict. These explanations are no more compelling now than when previously advanced, and this Court should again reject them.

With respect to the first purported explanation, as discussed in Section I.A. supra, the allegation of inconsistency between Dongbu and JTEKT, on the one hand, and the pre-existing decisions on zeroing, on the other, is baseless. No party contests that previous decisions permitted zeroing in the context of administrative reviews as an acceptable reading of the applicable statute. The question in Dongbu and JTEKT, however, was not whether zeroing was permissible as a general matter, but rather whether zeroing in reviews but not investigations was permissible given the common statutory provision (19 U.S.C. § 1677(35)), which resides in the "definitions" part of the statute and undergirds the application of zeroing in both types of proceedings. The Court's recent opinions on this quite different question do not represent even a departure from pre-existing precedent, much less a contradiction of it. This was precisely why the Trade Court correctly opined that the alleged inconsistency between the previous cases upholding the use

9

of zeroing and the more recent cases "is insufficient to satisfy the inquiry of the Court of Appeals." Union Steel, 823 F. Supp. 2d at 1357.

As to the WTO implementation issue, the Trade Court correctly noted that, in response to adverse WTO rulings, the Department may "change its practices to comply, if they do not violate the statute." Union Steel, 823 F. Supp. 2d at 1358. However, this truism misses the point – no party here has questioned the Department's authority to abandon zeroing in investigations to comply with the U.S.'s WTO obligations. But the Department's undoubted right to do so does not confer upon it the collateral right to continue to apply zeroing in administrative reviews where doing so creates an inconsistency in the application of a single statutory provision in the two different types of proceedings. As this Court noted in Dongbu, "the political branches' decision to comply with the WTO ruling only as to investigations does not mean that it is lawful to give inconsistent constructions to the same statutory language. Rather, Commerce's interpretation of the statute must comply with domestic law including reasonably interpreting statutes." 635 F.3d at 1372 (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)). The Department below has not offered any new arguments on this point or otherwise provided any basis on which this Court should reverse its position. Amici submit that both the "Dongbu/JTEKT

10

invalidity" defense and the "WTO implementation" defense already have been

dismissed as insufficient; this Court should dismiss them here as well.

## II.    CORUS ESTABLISHES THAT DIFFERENCES IN INVESTIGATION AND REVIEW CALCULATION METHODOLOGIES CANNOT JUSTIFY THE DEPARTMENT'S INCONSISTENT STATUTORY INTERPRETATIONS

As discussed above, Amici submit that this Court's decisions in JTEKT and

Dongbu addressed – and rejected – all of the justifications advanced by the

Department to support the continued use of zeroing in administrative reviews.

Nonetheless, it might be asserted that the Department has provided this Court with

one enhanced justification for its inconsistent statutory interpretation – namely,

that differences between the calculation methodologies used in investigations and

administrative reviews justify this inconsistency.  Certainly, the Department has

provided a more elaborate explanation of this justification than what was

considered by the Court in Dongbu.  See Dongbu, 635 F.3d at 1372 ("{T}he

government has not pointed to any basis in the statute for reading 19 U.S.C. §

1677(35) differently in administrative reviews than in investigations.").

However, this enhanced justification is *not* a matter of first impression for

this Court.  To the contrary, the Court already has considered in depth whether

different calculation methodologies could justify different interpretations of 19

U.S.C. § 1677(35) with respect to the use of zeroing.  See Corus I, 395 F.3d at

11

1346-47.  As the <u>Dongbu</u> court aptly observed with respect to <u>Corus I</u>, "this court has expressly adopted the position taken by the government in earlier cases that there is no statutory basis for interpreting 19 U.S.C. § 1677(35) differently in investigations than in administrative reviews."  <u>Donbgu</u>, 635 F.3d at 1372 (citing <u>Corus I</u>).  Based on the binding <u>Corus I</u> precedent, the <u>Dongbu</u> court was correct – indeed, compelled – to reject the Department's suggestion that different calculation methodologies could justify the inconsistent statutory interpretation.  This Court likewise is bound by <u>Corus I</u>, notwithstanding the Department's abrupt about-face with respect to the relevance of differences in investigation and review calculation methodologies to the statutory interpretation underlying the use of zeroing.

In <u>Corus I</u>, this Court considered an argument by a respondent in an original investigation that the Court should "draw a distinction in the application of section 1677(35) as between administrative investigations and administrative reviews."  395 F.3d at 1347.  Specifically, the respondent argued that "the reference in section 1677f-1(d)(1)(A)(i) to 'weighted average' unambiguously contemplates the use of *all* subject merchandise in administrative investigations to calculate the weighted average, as opposed to section 1675(a)(2)(A)'s calculation of individual dumping margins for each export transaction in administrative reviews."  <u>Id.</u> (emphasis in original).  In the respondent's view, this distinction was meaningful because "section 1677(35) requires Commerce to base its final determination on weighted-

12

average dumping margins that include all prices for all of the merchandise under investigation, not merely the prices of transactions that yield positive dumping margins." Id. at 1346. As the Court observed, the respondent advanced this argument to avoid the application in the administrative review context of prior judicial precedent holding that zeroing was permissible pursuant to 19 U.S.C. § 1677(35). See id. at 1347 (citing Timken).

The Department opposed the argument advanced by the respondent in Corus I, arguing forcefully that the different calculation methodologies employed in investigations and administrative reviews did not justify an inconsistent interpretation of 19 U.S.C. § 1677(35). Specifically, the Department stated:

> Although the proceeding at issue in Timken was an administrative review (Timken, 354 F.3d at 1338-39) and not an investigation, this distinction is not dispositive because that case implicated Commerce's interpretation of the same statutory provisions at issue in this case – 19 U.S.C. §§ 1677(35)(A) and (B). *There is no provision in the statute for applying the definitions of "dumping margin" and "weighted average dumping margin" differently in an investigation and a review.*

Brief for Defendant-Appellee, Department of Commerce at 18, Corus I, 395 F.3d 1343 (Fed. Cir. 2005) (No. 04-1107), available at 2004 WL 3768287 at *18 (emphasis added). The Department continued by explaining in detail the steps involved in the dumping margin calculation methodology, and the irrelevance of the difference between the methodologies used in

investigations and administrative reviews for the purpose of interpreting the

statute:

> Pursuant to [19 U.S.C. § 1677(35)], Commerce calculates the overall antidumping duty margin in an investigation and in a review in a two-stage process. The difference in the calculation between an investigation and a review is found within the methodology employed in the first stage. The basis for this difference is found in 19 U.S.C. § 1677f-l(d)(1)(A) and (2). Under these provisions, in a review, Commerce normally compares individual United States prices with monthly weighted average normal values. *However, {the respondent} fails to explain how this methodological distinction (contained within step one of the calculation) has any impact upon Commerce's practice with respect to the aggregation of the dumping margins into the weighted average dumping margin (step two) whether in an administrative review or in an investigation.*

Id. at 18-19 (emphasis added). Based on this analysis, the Department concluded

that its interpretation of 19 U.S.C. § 1677(35) was equally applicable in the

investigation and review contexts. See id.

This Court in Corus I agreed with the Department. In rejecting the

respondent's argument, the Court acknowledged the distinction between original

investigations and administrative reviews, but the court concluded that this

distinction did not impact the application of 19 U.S.C. § 1677(35). The Corus I

court stated that:

> It is true that the comparisons between U.S. price (here, [constructed export price ("CEP")]) and [normal value ("NV")] differ between investigations and reviews, but they differ because investigations compare average U.S. price to average NV, while reviews compare U.S. price to monthly average NV on an entry-by-entry basis. Further, this distinction is subsumed under Commerce's methodology:

14

the result of the comparison of NV and CEP, whether in the context of investigations or reviews, falls under section 1677(35)(A) (the first step of the methodology) and is then aggregated under section 1677(35)(B) (the second step).

Corus I, 395 F.3d at 1347.

In light of Corus I, the Department's explanation for its inconsistent statutory interpretation is neither new nor sufficient. The Department points to differences in the types of comparisons made in original investigations and administrative reviews, but the results of these two types of comparisons are treated equally in the second step of the calculation process under 19 U.S.C. § 1677(35), as observed by the Corus I court. As the Court correctly found, mere aggregation of pricing comparisons does not warrant a divergent interpretation of 19 U.S.C. § 1677(35) for original investigations as compared to administrative reviews.

The Department may wish to repudiate the precedent that it helped to create, but the Court cannot. Amici submit that Corus I compels this Court to reject the Department's contention that differences in the calculation methodologies employed in investigations and reviews justifies the Department's inconsistent interpretation of 19 U.S.C. § 1677(35).

## III.  AFFIRMANCE WOULD AUTHORIZE THE GOVERNMENT TO ADOPT CONFLICTING STATUTORY INTERPRETATIONS WITHOUT A LIMITING PRINCIPLE

If this Court, on the basis of the justifications advanced by the Department on this record, permits the Department to adopt contradictory positions with respect to 19 U.S.C. § 1677(35), the Court effectively will be granting the Department unfettered discretion to interpret and then reinterpret the antidumping statute. Such a grant of authority would far exceed the interpretive discretion committed to the Department pursuant to Chevron. Indeed, this Court in Dongbu rightly noted that Chevron step two deference is not unlimited, and its limits are of particular moment here given the absence of any expression of Congressional intent to permit the Department's contrary interpretations of a single over-arching definitional statutory provision. If the Court nonetheless allows the Department to vary its interpretation of 19 U.S.C. § 1677(35) from one proceeding to another, it is unclear why the Department could not do the same with any other provision in the antidumping statute. The inevitable result will be ad hoc policy-making masquerading as statutory interpretation (or reinterpretation), which is not an appropriate exercise of discretion under Chevron step two and is contrary to the Department's obligation to administer the antidumping statute according to discernible standards.

16

## A. The Department's Interpretation is Subject to Limited Deference

As a threshold matter, Amici submit that the Department's interpretation of the antidumping statute is not entitled to full <u>Chevron</u> deference. This Court has twice reaffirmed the principle that the Department's discretion with respect to statutory interpretations is not unlimited. In <u>Dongbu</u>, this Court made that principle clear: "Although 19 U.S.C. § 1677(35) is ambiguous with respect to zeroing and Commerce plays an important role in resolving this gap in the statute, Commerce's discretion is not absolute." 635 F.3d at 1372; <u>see also</u> <u>SKF USA, Inc.</u> <u>v. United States</u>, 263 F.3d 1369, 1381 (Fed. Cir. 2001). The <u>Dongbu</u> court was correct to emphasize the limits of the Department's discretion, given that the Department's contradictory construction of 19 U.S.C. § 1677(35) is not a longstanding agency interpretation. Indeed, the abandonment of zeroing in investigations was only implemented in 2007.[1] As such, the Department's

---

[1] Nor, indeed, has the Department's contradictory statutory interpretation been consistently held. On February 14, 2012, the Department published a notice stating that, for administrative reviews whose preliminary results are published after April 16, 2012, the Department will no longer use zeroing. <u>See</u> <u>Antidumping</u> <u>Proceedings: Calculation of the Weighted Average Dumping Margin and</u> <u>Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification</u>, 77 Fed. Reg. 8,101 (Feb. 14, 2012). Amici note that, therefore, in a few short years, the Department has maintained three conflicting interpretations of the same statutory provision, as follows:

(i) 1677(35) provides for zeroing in investigations and, at the same time, in administrative reviews;

(ii) 1677(35) provides for offsetting (not zeroing) in investigations but, at the same time, not in administrative reviews; and

contradictory position as to the provision at issue here was developed long after the agency began to use zeroing.

The Supreme Court has held that "an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is 'entitled to considerably less deference' than a consistently held view …." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994); accord Gary Gose v. United States Postal Serv., 451 F.3d 831, 837 (Fed. Cir. 2006). Moreover, the Supreme Court has specifically rejected the argument that one definition of a statutory term in one section did not apply to use of the term in a related section. See Sorenson v. Treasury, 475 U.S. 851, 860 (1986).

Taken together, these precedents establish that there is no basis on which this Court need defer to the Department's newfound position, which gives inconsistent meanings to the same statutory provision. Rather, accepting that the Department's interpretation is entitled to at least some deference as an agency-wide position, the Court must carefully scrutinize the Department's interpretation for reasonableness. Cathedral Candle Co. v. United States Int'l Trade Comm'n, 400 F.3d 1352, 1367 (Fed. Cir. 2005). As detailed below, the Department's interpretation does not pass muster under such scrutiny.

---

(iii) 1677(35) provides for offsetting (not zeroing) in investigations, and, at the same time, in administrative reviews.

**B.    There Is No Indication that Congress Intended for the Department to Adopt Conflicting Statutory Interpretations**

As discussed in sections I and II supra, the Department's conflicting statutory interpretation is unreasonable because, as this Court already has found in Dongbu, JTEKT and Corus I, the explanations underlying this interpretation are unpersuasive.  However, there is another measure of reasonableness that this Court may consider: whether there is any indication of Congressional support for the Department's conflicting statutory interpretation.

Viewed through this lens, the Department's interpretation again fails to satisfy Chevron's reasonableness standard.  The Department's conflicting interpretations of 19 U.S.C. § 1677(35) are untethered to the plain text and legislative history of this provision, neither of which even hints that Congress intended different (and indeed opposing) interpretations of the provision depending on the segment of the proceeding at issue.  As a principle of sound statutory construction, this Court has presumed that Congress, in defining a term, would define it consistently.  See SKF, 263 F.3d at 1382.  Likewise, this Court has required evidence to rebut that presumption of consistency.  See id.  There is no such evidence here.

The need for such evidence is especially important in this case, where the Department has interpreted the same provision of the statute in diametrically opposed ways.  In that regard, this Court previously has expressed misgivings

19

about the Department's reliance on differing interpretations of the same statutory language. See SKF, 263 F.3d 1369; confirmed by FAG Kugelfischer Georg Schaefer AG v. United States, 332 F.3d 1370 (Fed. Cir. 2003) ("FAG Kugelfischer").

In FAG Kugelfischer, this Court considered the Department's interpretation of the definition of the term "foreign like product" in the antidumping statute, which differed depending upon the specific facts of a proceeding. The Court ultimately upheld the Department's differing interpretations based on a critical factor absent from the current case – namely, evidence that Congress intended the Department to apply such differing interpretations. Specifically, the Court observed that Congress had established three different calculation methodologies that used the term "foreign like product." See FAG Kugelfischer, 332 F.3d at 1373. The Court found that such a scheme established a hierarchy of definitions, which increased the scope of the products that could be included in these calculations. See id. Further, the Court observed that the statute provided no explicit restriction that the Department use only one of the calculation methodologies per proceeding. See id. As such, the Court held that the Department could reasonably use different sets of "foreign like product" data in one provision – i.e., that the Department could apply different interpretations of the term "foreign like product". See id.

20

FAG Kugelfischer thus turned on very different facts from those that are present in this case.  There, the Department's differing interpretations were grounded in a hierarchy specifically established by the statute.  Here, in contrast, Congress has provided no such hierarchy or other textual support for differing interpretations of a single definition.  19 U.S.C. § 1677(35) does not contain separate, distinct definitions of the term "dumping margin" depending upon the phase of the proceeding at issue.  Dongbu specifically found, and the Government conceded, that the statutory definition of the term applies in both investigations and reviews.  635 F.3d at 1372.  As such, this case is "more straightforward" than – and readily distinguished from – FAG Kugelfischer.  Id.

In short, there is only one statutory provision, which the Department has interpreted in two ways while making the same calculation.  And, as noted in section II supra, the Department has advanced this interpretation notwithstanding its long-standing position that "[t]here is no provision in the statute for applying the definitions of 'dumping margin' and 'weighted average dumping margin' differently in an investigation and a review."  Dongbu, 635 F.3d at 1365-66 (quoting Brief for Defendant-Appellee, Department of Commerce at 18, Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343 (Fed. Cir 2005)).  Thus, by the Department's own admission and a plain reading of the antidumping statute, there

is no basis to conclude that Congress intended the Department to adopt conflicting

interpretations of 19 U.S.C. § 1677(35).

**C.    If the Department Is Permitted to Apply Conflicting Statutory
Interpretations in the Zeroing Context, the Department Will Be
Able To Do So In Virtually Any Other Context Under the
Antidumping Statute**

If the Department is permitted to interpret the provision at issue here in two

different ways, there will be no principle that limits the Department's ability to

change its  interpretations of other aspects of the antidumping statute at its whim.

In turn, respondents' ability to rely on the relative predictability of the antidumping

margin calculation methodology to price fairly, and thus the "remedial purpose of

the antidumping laws" will be entirely undermined.  See SKF USA Inc. v. United

States, 630 F.3d 1365, 1374 (Fed. Cir. 2011) citing NTN Bearing Corp. v. United

States, 74 F.3d 1204, 1208 (Fed. Cir. 1995) ("[T]he antidumping laws are remedial

not punitive.").  The Supreme Court has held this mode of statutory construction to

be unlawful.

In Clark v. Martinez, the Supreme Court considered whether it could accept

the Government's argument that a single statutory provision regarding detention

could be given different meanings when applied to separate categories of aliens.

543 U.S. at 377, 378 (noting that the statutory provision itself applies to three

categories of aliens).  The Court first noted that the provision at issue applied

22

without differentiation to all three categories of aliens. Id. It then held, "{t}o give these same words a different meaning for each category would be to invent a statute rather than interpret one." Id.

The Court reached this conclusion after extensive review of several sets of court decisions, which, when read together, appeared to the dissent to establish that a single statutory provision could have different meanings. Id. at 383. When analyzing each set of cases, the Court rejected the view that different interpretations could apply based on subtle distinctions in a statutory scheme. The Court noted that setting such a precedent would present a plethora of other statutory construction problems, specifically stating: "We find little to recommend the novel interpretive approach advocated by the dissent, which would render every statute a chameleon …." Id. at 381.

The Department's position risks making just such a chameleon of the antidumping statute. If this Court ratifies that position, there is no reason why the Department could not decide to "interpret," for example, the "constructed export price profit" and "circumstances of sale" provisions of the antidumping statute differently in reviews than investigations. See 19 U.S.C. §§ 1677b(a)(6), 1677a(f). The operative language of these provisions applies to both investigations and reviews without distinction or qualification, no differently than does 19 U.S.C. § 1677(35). There simply is no limiting principle that would prevent the Department

from reinterpreting these provisions differently in different proceedings, thereby making it impossible for respondents to adjust their pricing practices in a manner to avoid dumping. See SKF, 630 F.3d at 1374 (holding that the inability to adjust pricing to avoid dumping would undermine the remedial purpose of the antidumping laws and remanding because "Commerce did not address SKF's concern that it could not control its pricing to avoid dumping . . . or explain why this concern was unjustified or why it was outweighed by other considerations.").

In sum, the Department has asked this Court to accept its proffered justifications for conflicting interpretations of the same statutory provision, without any showing of Congressional intent to support the resulting conflicting interpretations. To do so would eviscerate any semblance of judicial review, and would eliminate any responsibility by the Department to tether its actions to the text of the antidumping statute. The Department's position is contrary to well-established precedent of this Court and the Supreme Court regarding statutory interpretation – the Court should decline to adopt it.

# CONCLUSION

For the foregoing reasons, amici respectfully request that this Court reverse the decision of the Court of International Trade, and remand this case with instructions to remand the <u>Final Results</u> to the Department for recalculation of Plaintiffs-Appellants' dumping margin without reference to the zeroing methodology.

Respectfully submitted,

Neil R. Ellis
Jill Caiazzo

Counsel to JTEKT Corporation
and Koyo Corporation of U.S.A.

Robert A. Lipstein
Alexander H. Schaefer

Counsel to NSK Corporation, NSK
Ltd., and NSK Precision America, Inc.

Dated:  June 11, 2012

Kevin M. O'Brien
Diane A. MacDonald
Christine M. Streatfeild

Counsel to  NTN Corporation,
NTN Bearing Corporation of
America, American NTN Bearing
Manufacturing Corporation,
NTN-Bower Corporation and
NTN Driveshaft, Inc.

25

## CERTIFICATE PURSUANT TO RULE 32(a)(7)(C)

I, Alexander H. Schaefer, an attorney at the law firm of Crowell & Moring LLP, who is responsible for this brief, relying upon the Microsoft Office Word 2007 word count feature of the word processing program used to prepare this brief, certify that this brief, which used Times New Roman font with 14 pt. type, contains 5247 words, and thus complies with the type-volume limitation contained in Rule 29(d) and Rule 32(a)(7)(B)(i).


/s/ Alexander H. Schaefer
_____
Alexander H. Schaefer

# CERTIFICATE OF SERVICE

I hereby certify that, the amicus brief of JTEKT Corporation, Koyo Corporation of U.S.A., NSK Ltd., NSK Corporation, NTN Corporation, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN-Bower Corporation and NTN Driveshaft, Inc., CAFC No. 12-1248, -1315, was filed electronically on June 11, 2012. Pursuant to Federal Rules of Appellate Procedure 25(c), Federal Circuit Rule 25(a), and the Administrative Order Regarding Electronic Case Filing, EDF-6, I understand that the notice of this filing generated by the Court's CM/ECF system constitutes service of the amicus brief on all parties below on June 11, 2012. Parties may access this filing through the Court's electronic system.

**On Behalf of the United States:**
L. Misha Preheim, Esq.
Civil Division
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480 Ben Franklin Station
Washington, DC 20044

Daniel J. Calhoun, Esq.,
Department of Commerce
Office of the Chief Counsel for Import
Administration
1401 Constitution Avenue, NW
Washington, DC 20230

**On Behalf of United States Steel Corporation:**
Jeffrey David Gerrish, Esq.
Skadden Arps Slate.Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005

**On Behalf of Union Steel, LG Hausys, Ltd., LG Hausys America, Inc., and Dongbu Steel Co., Ltd.:**
Donald B. Cameron, Esq.
Morris, Manning & Martin, LLP
1333 H Street, NW Suite 820
Washington, DC 20005

**On Behalf of Nucor Corporation:**
Timothy C. Brightbill, Esq.
Wiley Rein, LLP
1776 K Street, NW
Washington, DC 20006

/s/Alexander H. Schaefer
Alexander H. Schaefer

# PROOF OF SERVICE

I hereby certify that, the CORRECTED amicus brief of JTEKT Corporation, Koyo Corporation of U.S.A., NSK Ltd., NSK Corporation, NTN Corporation, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, NTN-Bower Corporation and NTN Driveshaft, Inc., CAFC No. 12-1248, -1315, was filed electronically on September 26, 2012.  Pursuant to Federal Rules of Appellate Procedure 25(c), Federal Circuit Rule 25(a), and the Administrative Order Regarding Electronic Case Filing, EDF-6, I understand that the notice of this filing generated by the Court's CM/ECF system constitutes service of the CORRECTED amicus brief on all parties below on September 26, 2012.  Parties may access this filing through the Court's electronic system.

**On Behalf of the United States:**
L. Misha Preheim, Esq.
Civil Division
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 480 Ben Franklin Station
Washington, DC 20044

Daniel J. Calhoun, Esq.,
Department of Commerce
Office of the Chief Counsel for Import Administration
1401 Constitution Avenue, NW
Washington, DC 20230

**On Behalf of United States Steel Corporation:**
Jeffrey David Gerrish, Esq.
Skadden Arps Slate.Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005

**On Behalf of Union Steel, LG Hausys, Ltd., LG Hausys America, Inc., and Dongbu Steel Co., Ltd.:**
Donald B. Cameron, Esq.
Morris, Manning & Martin, LLP
1333 H Street, NW Suite 820
Washington, DC 20005

**On Behalf of Nucor Corporation:**
Timothy C. Brightbill, Esq.
Wiley Rein, LLP
1776 K Street, NW
Washington, DC 20006

/s/Alexander H. Schaefer
Alexander H. Schaefer